UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

**CORNELIUS PHELPS,**

Plaintiff,

v.

Case No.

Hon.

**CITY OF SAGINAW,** a municipal corporation, **FRATERNAL ORDER OF POLICE ASSOCIATES, RAY JANNI LODGE, INC.**, **VINCENT JACKSON,** in his individual and official capacities, **TERRANCE MOORE**, in his individual and official capacities, **DESIRAE KZINOWEK,** in her individual and official capacities, and **OSCAR LOPEZ**, in his individual and official capacities,

Defendants.

_______________________________________________/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 788-7446
jack@michiganworkerlaw.com
*Attorneys for Plaintiff*

Hugh M. Davis (P12555)
2930 E. Jefferson Ave.
Detroit, MI 48207
(313) 788-7446
Davis@conlitpc.com
*Attorneys for Plaintiff*

_______________________________________________/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COME** Plaintiff Cornelius Phelps, for his Complaint against the Defendants City of Saginaw, Fraternal Order of Police Associates, Ray Janni Lodge,

Inc., Vincent Jackson, Terrance Moore, Desirae Kzinowek, and Oscar Lopez, in their individual capacities and official capacities pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and state as follows:

## INTRODUCTION

1. The death of George Floyd at the hands of Minneapolis police officers on May 25, 2020 sparked ongoing nationwide protests against unjustified police violence and systemic racism. The death amplified additional black lives taken by police including Breonna Taylor, as well as Milton Hall in Saginaw. Beginning in June 2020, Plaintiff and countless other Saginaw residents began to stage peaceful protests at various public locations within the City of Saginaw.

On July 26, 2020, Defendant Officers, all acting within the scope of their respective authorities and pursuant to the customs, policies or practices of Defendants City of Saginaw, resorted to the use of dangerous excessive force, including the use of a taser, in response to Plaintiff's peaceful protest over disparate use of excessive force and racism by law enforcement. Ultimately, Plaintiff was beaten, tased, arrested, and baselessly prosecuted for almost three years to deter him and others from continuing their protected protest activities.

This civil rights action arises out of Defendants' unlawful practices as described above. Plaintiff seeks relief for violations, under color of state law, of his rights, privileges and immunities secured by the First, Fourth, and Fourteenth

Amendments to the United States Constitution, pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983, and state tort law.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights jurisdiction).

3. The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney fees.

4. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

5. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) as a significant amount of the acts and omissions giving rise to this complaint occurred in Saginaw County.

## PARTIES

6. Plaintiff Cornelius Phelps ("Phelps" or "Plaintiff") is an individual and a resident of Saginaw, MI. Phelps is a member of the "Ghost of George Floyd." At all relevant times, Phelps has participated in and been one of the organizers of the relevant demonstrations.

7. Defendant City of Saginaw is a municipal corporation duly organized and existing under the Constitution and laws of the State of Michigan. It is, and has

been at all times relevant hereto, authorized by law to maintain and operate the Saginaw Police Department ("SPD"). By and through its agents, including but not limited to the City Manager, the Chief of Police, its supervisors, operating officers, Boards, Commissions, and Committees and its final policymakers, Defendant City, at all times relevant hereto, acting through its official policy makers, established, promulgated and implemented the policies, customs and practices, written and unwritten, of the SPD, with regard to hiring, training, supervision, discipline of the employees of said department, as well as the Departmental response to protected protest activity.

8. Defendant Fraternal Order of Police Associates, Ray Janni Lodge, Inc. ("FOP") is a domestic non-profit organization incorporated under the laws of Michigan and located at 1120 S. Niagara St. Saginaw, MI 48602.

9. Defendant Vincent Jackson ("Defendant Jackson") is a duly appointed police officer with the Saginaw Police Department. Upon information and belief, he is a resident of Saginaw County, Michigan and at all relevant times was employed by the City of Saginaw, specifically SPD, as a police officer, and acting pursuant to his authority on its behalf, within the scope of his employment, and under the color of law. He is sued in his individual and official capacities.

10. Defendant Terrance Moore ("Defendant Moore") is a duly appointed police officer with the Saginaw Police Department. Upon information and belief, he

is a resident of Saginaw County, Michigan and at all relevant times was employed by the City of Saginaw, specifically SPD, as a police officer, and acting pursuant to his authority on its behalf, within the scope of his employment, and under the color of law. He is sued in his individual and official capacities.

11. Defendant Desirae Kzinowek ("Defendant Kzinowek") is a duly appointed police officer with the Saginaw Police Department. Upon information and belief, she is a resident of Saginaw County, Michigan and at all relevant times was employed by the City of Saginaw, specifically SPD, as a police officer, and acting pursuant to her authority on its behalf, within the scope of her employment, and under the color of law. She is sued in her individual and official capacities.

12. Defendant Oscar Lopez ("Defendant Lopez") is a duly appointed police officer with the Saginaw Police Department and President of Defendant FOP. Upon information and belief, he is a resident of Saginaw County, Michigan and at all relevant times was employed by the City of Saginaw, specifically SPD, as a police officer, and acting pursuant to his authority on its behalf, within the scope of his employment, and under the color of law. He is sued in his individual and official capacities.

13. At all times pertinent hereto, the individual officer Defendants were employees of the Defendant City of Saginaw ("Saginaw"), acting within the scope

of their employment as agents of their respective departments under color of law, cloaked with the authority which was granted to them.

14. At all relevant times, Defendant FOP, a private party, acted under the color of law for the purpose of § 1983 as a result of its symbiotic relationship/nexus with the public Defendants, as well as the public Defendants actions in significantly encouraging or coercing the FOP, either overtly or covertly, to take the particular actions at issue in this lawsuit.

15. Collectively, the Defendants acted in concert with each other to cause the injuries and constitutional violations to Plaintiff.

## FACTUAL ALLEGATIONS

*Milton Hall, Black Lives Matter, and the context of the 2020 Demonstrations*

16. The pursuit of equal justice under law for Black citizens in America has a long, storied past. The demonstration at issue in this lawsuit, for which the Plaintiff was excessively beaten, tazed, jailed, and prosecuted, was an attempt to address systemic excessive force and brutality by law enforcement, including within the City of Saginaw.

17. For example, in April 2012, Saginaw Police Officers tased a thirty-eight year old African American man, Bobby Merrill, to death.[1]

[1] https://www.mlive.com/news/saginaw/2012/04/bobby_merrill_was_not_a_beast.html

18. On July 1, 2012, Milton Hall, an African American man suffering mental illness, was lawfully traversing Riverview Plaza on West Genesee in Saginaw when he was confronted, taunted, and ultimately shot forty-six times by Saginaw Police Officers.

19. Police violence in America is disproportionately deployed against Black Americans. The demonstration at issue in this matter was part of a series of demonstrations arising from recent egregious and widely publicized police killings around the country.

20. In 2017, Saginaw Police Officers used lethal force on Farhad "Fred" Jabbari *after* having him fully detained on suspicion of driving while intoxicated. On information and belief, the Jabbari was detained, fully handcuffed, and placed in a police vehicle. While detained in the police vehicle, Jabbari stated that he was going to commit suicide. The officer then opened the vehicle door, was eye gouged by Jabbari, then fatally shot Jabbari within a few seconds.

21. In February 2020, Zane Blaisdell, a man experiencing a mental health crisis, was shot and killed by the Saginaw Police Officers who were responding to a domestic violence call. Among the officers present was Defendant Vincent Jackson who, on information and belief, rejected the suggestion that a team of mental health professionals/officers should be deployed. Instead, the officers released a canine unit then entered the home and fatally shot Blaisdell.

22. On May 25, 2020, George Floyd was murdered by Minneapolis police. Mr. Floyd, a Black man, was arrested after being accused of a non-violent, petty offense. For nearly nine minutes, then-Officer Derek Chauvin placed his knee—and the weight of his body—on Mr. Floyd's neck as Mr. Floyd lay handcuffed and pinned to the ground and three other officers stood by. In his dying moments, Mr. Floyd struggled to breathe, pleaded for mercy, and called out to his deceased mother. Among Mr. Floyd's last words were "I can't breathe."

23. Video footage of George Floyd's death was widely publicized, and images of Mr. Floyd joined countless others as symbols of the ongoing fight for police accountability.

24. Against this backdrop of police excessive force and killings across the country, Plaintiff and other concerned citizens in Saginaw joined in non-violent protest calling for justice and accountability for police officers and the unions that protect them.

25. Beginning in late May and/or early June 2020, concerned citizens in Saginaw began to hold marches and demonstrations to demand justice for the killing of George Floyd and all other people systematically brutalized.

26. On or around June 2, 2020, hundreds of people in Saginaw marched to demand justice of George Floyd.[2] The march began at Saginaw's Hoyt Park and ended at the Saginaw County Governmental Center building. The event was peaceful and, on information and belief, had no reports of property destruction.

27. From this point forward, Saginaw residents held several similar peaceful protests on public property. On information and belief, there were no reports of property destruction or violence against protestors throughout the demonstrations in Saginaw over the Summer of 2020.

28. Around this time, some demonstrators commenced a project for policy change they titled "The Ghost of George Floyd" (GOGF"), largely seeking policy change within the SPD.

29. Among the changes sought by GOGF were policies making the use of excessive force grounds for immediate termination and barring the use of any force to the neck.

30. Generally, GOGF would meet and hold demonstrations on the public property in front of the SPD Headquarters. Demonstrators would hold signs and discuss the impacts of police brutality on our lives, as well as what a future without police brutality would look like.

[2] https://www.mlive.com/news/saginaw-bay-city/2020/06/enough-is-enough-hundreds-march-in-saginaw-to-demand-justice-for-george-floyd.html

31. As part of the demonstrations, GOGF would place a table at the edge of the public property to create a space for Saginaw public officials to come speak with them. During this period, several individuals, including the Saginaw Police Chief Robert Ruth, sat at the table to engage in dialogue with the demonstrators.

32. Plaintiff participated in nearly every demonstration in Saginaw.

33. On July 11, 2020, SPD Officer Adam Collier punched and assaulted an African American woman twice while she was in custody and handcuffed.

34. For this and other reasons, Plaintiff and other protestors felt compelled to continue vocalizing their demand for accountability.

*The demonstration on the public property adjacent to 1120 S. Niagara*

35. On July 26, 2020, Plaintiff, along with other individuals organized a demonstration to be held at the public property adjacent to the FOP Lodge at 1120 S. Niagara St. ("FOP Lodge"). As with the other events, a table was to be placed on the edge of the property to accommodate dialogue with police union leadership.

36. On information and belief, either immediately prior or during the arrival of Plaintiff and the other individuals, Defendant Jackson contacted Defendant Lopez, in his capacity as FOP President, and notified him that a protest was to occur at the FOP Lodge. Defendant Jackson asked Lopez if he wanted the protestors, including Plaintiff, removed. To which Defendant Lopez responded that the protestors were not welcome there.

37. Defendant Lopez was unaware of the protest prior to being informed by Defendant Jackson.

38. Following the conversation, Defendant Jackson headed to the scene.

39. At some point, Defendant Jackson was joined by Defendants Kzinowek and Moore. The Defendants officers arrived on the scene approximately ten minutes after the arrival of Plaintiff and the other demonstrators. At the time, the demonstrators were still assembling and setting up the table.

40. On information and belief the Defendant officers received training, as officers of the SPD, on what areas of the City of Saginaw are public property for which members of the public are allowed to be for any purpose, but especially for the exercise of the First Amendment rights.

41. Plaintiff was approached by Defendants Jackson, Kzinowek, and Moore who stated that the Plaintiff, as well as the other protestors, must leave because they are trespassing on private property.

42. Plaintiff responded to the officers that they were there to set up a table on public property and that it was his (correct) understanding that he was on public property and not that of the union hall.

43. Defendant Jackson responded that there was nothing to figure out and Plaintiff needed to leave. Ultimately, he ordered Plaintiff to put his hands behind his back.

44. Plaintiff explained that he was extremely afraid as he has previously been assaulted by officers. Plaintiff continued to correctly inform the Defendant officers that he was on public property. After which, Plaintiff was taken to the ground by Defendants Jackson and Kzinowek.

45. Once Plaintiff was on the ground on his hands and knees, Defendant Jackson repeatedly struck Plaintiff in his side with his knee . In total, Jackson struck Plaintiff with his knee 3-4 times.

46. Plaintiff was physically and psychologically stunned by fear that he could potentially be abducted, maimed, or even killed by the officers.

47. Plaintiff and other demonstrators continued to remind the officers that they were on public property.

48. The Defendant officers were completely indifferent to the fact that Plaintiff was on public property.

49. Plaintiff, as well as onlookers, pleaded with the officers to deescalate the situation rather than continue calls to put his hands behind his back. Instead, Defendant Jackson began to exclaim "Tase him" and "Tase him, baby!" After which, Defendant Moore tased Plaintiff for approximately eight seconds.

50. At this point, Plaintiff was terrified, cried for help and pleaded with the officers that he could not move as he was in a state of terror. Defendant Moore then tased Plaintiff a second time for approximately 5-6 seconds.

51. Plaintiff, fearful for his life, rolled onto his back. Plaintiff was instructed to put his hands behind his back but the officers restrained him and prevented him from moving his hands. Even though the officers were preventing Plaintiff from complying, he was tased a third time by Defendant Moore.

52. At some point during the incident, the tasing and force used against Plaintiff caused him to soil himself.

53. As appalled witnesses verbally questioned the actions of the officers, they were met with threats to get back or they would be charged and/or met with similar force, including "[w]hen I tell you to get back, you better get back or you're going to get charged, you hear me!" and "who else wants to go to jail today?"

54. The Defendant officers lifted Plaintiff and dragged him to a police vehicle, during which they mocked him for urinating himself and indicated that he were to fall down they would just let him fall.

55. Plaintiff was arrested and taken to the hospital for treatment of his injuries, which included bruises and contusions.

56. Defendants targeted Plaintiff explicitly because they identified him as a protest leader and organizer.

57. At no time during the demonstration did Plaintiff act violently or pose any danger whatsoever to SPD officers.

58. The incident left Plaintiff traumatized.

59. After being discharged from the hospital, Plaintiff was processed and held in the Saginaw County jail overnight.

60. The following day, approximately a hundred protestors gathered on the Saginaw County Courthouse lawn demanding Plaintiff's release.

61. Plaintiff was released from jail on July 27, 2020, during the protest.

62. Shortly after, Plaintiff urinated blood as a result of the force used against him.

63. Plaintiff was prosecuted for trespassing and obstructing an officer, and/or resisting arrest, despite a complete lack of probable cause or supporting evidence.

64. Several months after the incident, with the assistance of legal counsel, Plaintiff was acquitted of the trespassing charges. However, despite no underlying crime, Defendant City of Saginaw continues to prosecute Plaintiff for the baseless remaining charges.

65. SPD arrested Plaintiff and detained him in the punitive conditions described above, ultimately prosecuting him for baseless felony charges as a blatant attempt to silence a protest leader and shut down the demonstrations.

66. Defendants' actions were motivated by retaliation against Plaintiff and other demonstrators for exercising his First Amendment rights and specifically in retaliation for their support of law enforcement accountability.

*<u>Saginaw's Policy, Practice, and Customs (Monell Allegations)</u>*

67. Plaintiff brings each claim against Defendants Jackson, Moore, and Kzinowek in their official capacities pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

68. The above-described violations of Plaintiff's constitutional rights are a direct result of the Saginaw's policy, practice, and custom of authorizing SPD to use excessive force to control and suppress protests.

69. Saginaw, through Defendants and their policymakers, has failed to train its officers in constitutional responses to peaceful demonstrations.

70. Plaintiff is informed and believes and thereon alleges that the SPD officers acted in accordance with orders given by supervisors from the highest command positions and/or in accordance with policies and procedures instituted by the SPD and the City of Saginaw. Moreover, the continued prosecution of Plaintiff and sheer lack of accountability of the actions of the Defendant officers, makes it clear that what occurred to Plaintiff reflects a pattern and practice of misconduct rather than an isolated incident.

71. On or around July 28, 2020, Saginaw's mayor Floyd Kloc stated that the department would investigate the incident and "if officers violated the department's use of force or de-escalation policies, [SPD] Chief Robert N. Ruth will

take action."[3] Similar sentiments were echoed by Saginaw City Manager Tim Morales. On information and belief, no officers were disciplined as a result of the incident. Instead, Defendants have privately continued the baseless prosecution of Plaintiff.

72. Later on July 28, 2020, a statement was released by the City of Saginaw stating that "The City has carefully reviewed both body camera and citizen recorded video of the incident and has determined that this was a valid arrest and find no violation of police policies and procedures."[4]

73. Within the City's statement, Chief Ruth stated that there is a "responsibility for safeguarding the well-being of the public…", however, did not identify how the actions of Defendants accomplished this alleged objective. Chief Ruth further elaborated officers "moved up the force continuum to effectuate the arrest" and officers may be required to use force in "a reasonable and prudent way to protect themselves and others" when dealing with non-compliant individuals. According to Chief Ruth's position within the City of Saginaw's official statement, "it was determined that the amount of force used was proportional to the threat and

---

[3] https://www.mlive.com/news/saginaw-bay-city/2020/07/saginaw-city-council-discusses-police-arrest-of-demonstrator-alleged-blue-flu-incident.html

[4] https://www.mlive.com/news/saginaw-bay-city/2020/07/saginaw-finds-no-violation-of-police-policies-or-procedures-in-use-of-stun-gun-arrest-of-demonstrator.html#:~:text=SAGINAW%2C%20MI%20%E2%80%93%20The%20City%20of%20Saginaw%20announced,outside%20the%20Saginaw%20Fraternal%20Order%20of%20Police%20lodge.

resistance and limited to the least amount required to accomplish legitimate police action."[5]

74. The statement was validated by Saginaw City Manager Morales who stated that it was the "City's responsibility to ensure the safety of the public as well as the police officers."[6]

75. However, Plaintiff had a legal right to be present where he was and violated no law or ordinance. At no time did he pose any threat to officers or others.

76. SPD policymakers acted with utter disregard for the constitutional rights of Plaintiff by authorizing, both explicitly and implicitly, the use of excessive force against Plaintiff despite him not posing any safety threat; by failing to properly train, supervise, and discipline SPD officers regarding appropriate use of force; and by failing to rectify the SPD's unconstitutional custom of using excessive force to control and suppress demonstrations.

77. Despite ample notice that SPD officers were using excessive force against citizens, Saginaw policymakers have failed to act to remedy the ongoing violations of constitutional rights by SPD officers, including by failing to train, supervise, or discipline SPD officers or issue corrective policies to prevent further violations.

---

[5] *Id.*

[6] *Id.*

78. Since the incidents contained herein, at least two SPD Officers have been charged with assaulting another private citizen and failing to intervene when other officers were assaulting him.[7] As with Plaintiff, the SPD officers continued to assault the individual after had already been detained and/or fully restrained.

79. As a direct and proximate cause of the conduct described herein, Plaintiff has been denied his constitutional, statutory, and legal rights as stated herein, and has suffered general and special damages, including but not limited to, physical injuries and bodily harm, pain, fear, humiliation, embarrassment, discomfort, anxiety, mental and emotional distress, and other damages in an amount according to proof.

80. Defendants' acts were willful, wanton, malicious, and oppressive, and done with conscious or reckless disregard for Plaintiff's rights.

81. The purpose and effect of the excessive force described herein has been to restrict, frustrate, and deter Plaintiff, as well as other protesters, from exercising their rights under the First Amendment to the United States Constitution to peacefully assemble, petition for redress of grievances, exercise freedom of speech, and exercise freedom of the press, and the Fourth Amendment to be free from unwarranted seizures by the government.

---

[7] https://www.ourmidland.com/news/article/4-police-officers-charged-for-assaulting-Saginaw-m-17412613.php

**COUNT I**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(FIRST AMENDMENT – FREE SPEECH AND ASSEMBLY)**
***(All Defendants)***

82. All preceding paragraphs are incorporated by reference.

83. At all relevant times, Defendants have acted—and continue to act—under color of state law.

84. At all relevant times, Defendant FOP, a private party, acted under the color of law for the purpose of § 1983 as a result of its symbiotic relationship/nexus with the public Defendants, as well as the public Defendants actions in significantly encouraging or coercing the FOP, either overtly or covertly, to take the particular actions at issue in this lawsuit.

85. The First Amendment to the Constitution of the United States (the "First Amendment") protects the right of private citizens to speak freely on subjects of their choice.

86. The First Amendment also protects the freedom of assembly of private citizens.

87. Plaintiff exercised his First Amendment rights as a private citizen on matters of public concern.

88. Plaintiff also exercised his First Amendment right to assembly.

89. Defendants' above-described conduct violated Plaintiff's right to freedom of speech, assembly, and association under the First Amendment to the United States Constitution.

90. A lawful demonstration that posed no threat was interrupted by brutal violence and additional retaliation without justification.

91. In dispersing Plaintiff from the assembly and/or demonstration, Defendants relied on violence, intimidation, and excessive force despite the peaceful nature of Plaintiff's actions. The SPD's tactics and methods would, and in fact did, deter Plaintiff, a man of reasonable firmness, from participating in future protests.

92. The Defendants' use of violence and excessive force against Plaintiff, a peaceful protestor, can reasonably be expected to chill a reasonable person from engaging in activity protected by the First Amendment, and in fact has deter him from participating in future events—the obvious intent of Defendants' tactics.

93. Defendants' actions were intended to cause a chilling effect on Plaintiff's protected speech and assembly.

94. As a result of the conduct complained of herein, Plaintiff suffered a deprivation of clearly-established rights protected and secured by the First and Fourteenth Amendments to the United States Constitution and by other laws, including the right to free speech, right to assembly, and the right to be free from retaliation for exercising the right to free speech and/or assembly.

95. As a result of the conduct complained of herein, Plaintiff suffered a deprivation of clearly-established rights protected and secured by the First and Fourteenth Amendments to the United States Constitution and by other laws, including the right to free speech, right to assembly, and the right to be free from retaliation for exercising the right to free speech and/or assembly

96. Defendants' policy, practice, and custom of using excessive force as described in this lawsuit to control and suppress demonstrations is not a reasonable regulation of the time, place, or manner of Plaintiff's First Amendment protected activity.

97. Defendants have acted with deliberate indifference to Plaintiff's First Amendment rights.

98. Plaintiff suffered harm as a direct and proximate result of Defendants' actions, including but not limited to physical injury, embarrassment, and pain and suffering.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(FOURTH AMENDEMENT – EXCESSIVE FORCE)**
***(All Defendants)***

99. All preceding paragraphs are incorporated by reference.

100. At all relevant times, Defendants have acted—and continue to act—under color of state law.

101. Defendants' above-described conduct violated Plaintiff's clearly established rights pursuant to the Fourth Amendment of the United States Constitution to be free from unreasonable, excessive, and arbitrary force, and seizures under color of law.

102. The arbitrary and indiscriminate use of force against Plaintiff, described in detail above, was excessive and objectively unreasonable, in direct violation of Plaintiff's rights under the Fourth Amendment.

103. Defendants intentionally deployed a taser against Plaintiff for the purpose of causing great bodily injury or with willful indifference to his wellbeing.

104. Defendants' attacks were done not to restrain Plaintiff, but to injure and punish him on site.

105. Defendants continued to physically assault Plaintiff once he had been fully restrained and subdued by the officers.

106. Plaintiff did not pose any reasonable immediate threat to the safety of any officer nor have Defendants provided sufficient evidence asserting so.

107. Defendants' attack served no purpose but to injure and punish Plaintiff.

108. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, physical injury, mental anguish and emotional distress, humiliation, and embarrassment, and have incurred attorney fees.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(FOURTH AMENDEMENT – ARREST WITHOUT PROBABLE CAUSE)**
***(All Defendants)***

109. All preceding paragraphs are incorporated by reference.

110. Defendants detained, seized, handcuffed, arrested, and searched Plaintiff's person despite the lack of any probable cause or reasonable suspicion that Plaintiff committed any crime.

111. All charges against the Plaintiff were baseless and have either been dismissed or he has been acquitted by a jury.

112. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including physical injury, mental anguish and emotional distress, humiliation and embarrassment, and have incurred attorney fees.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(FOURTH AMENDEMENT – MALICIOUS PROSECUTION)**
***(All Defendants)***

113. All preceding paragraphs are incorporated by reference.

114. Defendant City of Saginaw and Defendant Jackson issued tickets and prosecuted Plaintiff for crimes for which they knew or reasonably should have known Plaintiff to be innocent of or otherwise for which they did not have the evidence to support pursuing prosecution.

115. Defendants FOP and Lopez, acting jointly with all Defendants, sought the arrest and prosecution of Plaintiff for trespassing despite Plaintiff being on public property.

116. Defendants were provided direct evidence reaffirming Plaintiff was on public property during the assault but still refused to dismiss the baseless charges against him.

117. Plaintiff was correctly acquitted of the baseless underlying trespassing charge but Defendants refused to dismiss felony charges alleging Plaintiff resisted and/or obstructed an arrest, but the underlying arrest was unlawful.

118. As of the filing of this Complaint, Defendants continue the unjustified prosecution of Plaintiff.

119. The prosecution of Plaintiff was and is being done with malice and/or was intended to punish him for legal acts.

120. As a proximate result of the unconstitutional acts of Defendant City of Saginaw, Plaintiff was harmed and suffered damages for his physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

**COUNT V**
**CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1983**
***(All Defendants)***

121. All preceding paragraphs are incorporated by reference.

122. Defendant Police officers, either Moore or Jackson, directly contacted Defendant FOP, a private entity, to inform them that a protest was to occur near the FOP Lodge and inquired whether the FOP wanted the protestors to be removed prior to any complaint.

123. Prior to the contact from the on duty officers, Defendants FOP and Lopez were unaware that any protest was to occur.

124. Acting jointly, Defendants engaged and participated in, and acted in furtherance of, a conspiracy, the predominate purposes of which was to unconstitutionally deprive Plaintiff of his rights of freedom of speech and assembly guaranteed under the First Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to be free of coercive interference with the constitutional right to protected private speech of matters of public concern in violation of 42 U.S.C. § 1983.

125. As a direct and proximate result of actions taken by the Defendants in furtherance of the foregoing conspiracy to deprive plaintiff of his rights, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to pain and suffering, mental anguish and emotional distress, embarrassment and humiliation.

**COUNT VI**
**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983**
**(DELIBERATE INDIFFERENCE TO UNCONSTITUTIONAL CUSTOMS, POLICIES AND PRACTICES BY SYSTEMATIC FAILURE TO HIRE, TRAIN, SUPERVISE, MONITOR, INVESTIGATE, REPORT AND DISCIPLINE OFFICERS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS)**
***(Monell Liability Against Defendant City of Saginaw)***

126. Plaintiff incorporates herein all prior allegations.

127. A municipality is liable under 42 U.S.C. § 1983 if the alleged violations are attributable to its own policies, practices, and customs.

128. At all times relevant to this Complaint, Defendant City of Saginaw acted with deliberate indifference to Plaintiff's Constitutional rights by maintaining policies, practices, and customs that condoned and fostered the Defendant Officers' conduct. Specifically, the City of Saginaw maintained a policy that permitted the Defendant Officers to use unreasonable and excessive force on unarmed, nonthreatening individuals.

129. In the alternative and at all times relevant to this complaint, the City of Saginaw did not in fact have such a policy in place but failed to properly train and supervise the Defendant Officers, thereby demonstrating deliberate indifference to Plaintiff's rights.

130. At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and /or customs

developed, implemented, enforced, encouraged, and sanctioned by Defendant City of Saginaw, including the failure:

a. To adequately supervise and train its officers and agents, including the individual Defendants, thereby failing to adequately discourage further Constitutional violations on the part of its officers;

b. To adequately supervise and train its officers and agents, including the individual Defendants, on the proper standard for the proper standard for using force against a criminal suspect;

c. To adequately supervise and train its officers and agents, including the individual Defendants, on the proper standard for issuing tickets and probable cause;

d. To monitor and discipline its officers, including individual Defendants; and properly and adequately; and

e. To actively tolerate and support police misconduct.

131. Defendant City of Saginaw directly caused the constitutional violations suffered by Plaintiff and is liable for the damages caused as a result of the conduct of the individual Defendants. The conduct of the individual Defendant officers was a direct consequence of the policies and practices of Defendant City of Saginaw.

132. Upon information and belief, the individual Defendant Officers were not subjected to any disciplinary action despite their unlawful actions.

133. Defendant City of Saginaw has acted with deliberate indifference to the constitutional rights of the Plaintiff. As a direct and proximate result of the acts as stated herein by each of the Defendants, the Plaintiff's constitutional rights have been violated.

134. Defendant City of Saginaw, through its policymakers, has acted to ratify the actions of the Defendants contained herein through various statements validating and/or applauding the actions of the Defendants.

135. As a proximate result of the unconstitutional acts of Defendants, Plaintiff was harmed and suffered damages for his physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

**COUNT VII**
**ASSAULT AND BATTERY**
**(IN VIOLATION OF STATE LAW)**
***(Defendants Jackson, Moore, and Kzinowek)***

136. All preceding paragraphs are incorporated by reference.

137. The aforementioned actions and conduct of Defendants Jackson, Moore, and Kzinowek, as incorporated herein, were willful, wanton, intention and/or reckless.

138. The aforementioned actions and conduct of Jackson, Moore, and Kzinowek, as incorporated herein, created a reasonable apprehension of an immediate threat of harm and/or offensive touching to Plaintiff.

139. The aforementioned actions and conduct by Jackson, Moore, and Kzinowek, as incorporated herein, did in fact constitute an offensive and harmful touching of Plaintiff.

140. Defendants Jackson, Kzinowek, and Moore used excessive force to effectuate an unlawful arrest of Plaintiff.

141. Defendant Moore tazed Plaintiff despite him being no threat to any officer or individual.

142. Defendant Jackson directly hit Plaintiff in the kidney while he was already restrained.

143. Defendants knew or should have known that his aforementioned actions and/or conduct would cause injury to Plaintiff.

144. As a proximate result of the unconstitutional acts of Defendants, Plaintiff was harmed and suffered damages for his physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

**COUNT VIII**
**MALICIOUS PROSECUTION**
**(IN VIOLATION OF STATE LAW)**
**(*All Defendants*)**

145. All preceding paragraphs are incorporated by reference.

146. Defendant City of Saginaw and Defendant Jackson issued tickets and prosecuted Plaintiff for crimes for which they knew or reasonably should have known Plaintiff to be innocent of or otherwise for which they did not have the evidence to support pursuing prosecution.

147. Defendants FOP and Lopez, acting jointly with all Defendants, sought the arrest and prosecution of Plaintiff for trespassing despite Plaintiff being on public property.

148. Defendants were provided direct evidence reaffirming Plaintiff was on public property during the assault but still refused to dismiss the baseless charges against him.

149. Plaintiff was correctly acquitted of the baseless underlying trespassing charge but Defendants refused to dismiss felony charges alleging Plaintiff resisted and/or obstructed an arrest, but the underlying arrest was unlawful.

150. Defendants continued unjustified prosecution of Plaintiff was done with malice and/or was intended to punish him for legal acts.

151. As a proximate result of the unconstitutional acts of Defendant City of Saginaw, Plaintiff was harmed and suffered damages for his physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful practices in violation of Plaintiff's constitutional and statutory rights;

b. Award Plaintiff full and fair compensatory damages to be determined by a jury;

c. Award Plaintiff full and fair exemplary and punitive damages to be determined by a jury;

d. Award Plaintiff reasonable attorney fees, costs and interest; and

e. Award such other relief as this Court deems just and proper.

Respectfully submitted,

By: */s/ Jack W. Schulz*

Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 246-3590
jack@michiganworkerlaw.com
*Attorneys for Plaintiff*

Dated: May 1, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

**CORNELIUS PHELPS,**

Case No.

Plaintiff,

v.

Hon.

**CITY OF SAGINAW,** a municipal corporation, **FRATERNAL ORDER OF POLICE ASSOCIATES, RAY JANNI LODGE, INC.**, **VINCENT JACKSON,** in his individual and official capacities, **TERRANCE MOORE**, in his individual and official capacities, **DESIRAE KZINOWEK,** in her individual and official capacities, and **OSCAR LOPEZ**, in his individual and official capacities,

Defendants.

_______________________________________________/


Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226
(313) 246-3590
jack@michiganworkerlaw.com
*Attorneys for Plaintiff*

Hugh M. Davis (P12555)
2930 E. Jefferson Ave.
Detroit, MI 48207
(313) 788-7446
Davis@conlitpc.com
*Attorneys for Plaintiff*


_______________________________________________/

**DEMAND FOR TRIAL BY JURY**

Plaintiff Cornelius Phelps hereby demands a trial by jury.

Respectfully submitted,


By: */s/ Jack W. Schulz*
Jack W. Schulz (P78078)
SCHULZ LAW PLC
645 Griswold St Ste 4100
Detroit, MI, 48226

(313) 246-3590
jack@michiganworkerlaw.com
*Attorneys for Plaintiff*